IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CHERYL PINSON, ) | Civil Action No. 3:07-1056-PMD-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On August 26, 2003, Plaintiff applied for DIB. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held April 22, 2005, at which Plaintiff appeared and testified, the ALJ issued a decision dated October 20, 2005, denying benefits. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was thirty-four years old at the time she alleged she became disabled and thirty-nine years old at the time of the ALJ's decision. She has a college education and past relevant work as a billing specialist and accounting clerk. Plaintiff alleges disability since September 2, 2001, due to depression, diabetes, fibromyalgia, and hypothyroidism.

The ALJ found (Tr. 28-29):

1. The claimant met the non-disability requirements for a period of disability and Disability Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's diabetes mellitus and depression are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, of Regulation No. 4.

5. The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: to perform work with restrictions requiring [no "lifting and or carrying over 10 pounds occasionally and 3-5 pounds frequently with a sit/stand option....and limited to simple routine work in a low stress environment." Tr. 26].

7. The claimant is unable to perform any of her past relevant semi-skilled work (20 CFR § 404.1565).

8. The claimant is a "younger individual" (20 CFR § 404.1564).

9. The claimant has "more than a high school education" (20 CFR § 404.1564).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.1568).

11. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 404.1567).

12. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational

>>Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as clerical sorter, addresser, and order clerk, with approximately 10,000 jobs in the statewide economy and in excess of 700,000 jobs nationally.

>13.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

On March 13, 2007, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on April 18, 2007.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Beginning in March 1999, Plaintiff was treated by Dr. J. Frank Martin (a family practitioner with Palmetto Family Medicine) for various impairments including sinus problems, diabetes, dizziness, and arthritic complaints. See Tr. 116-125. On January 17, 2001, Plaintiff complained of pain and numbness in her lower extremities with overwhelming fatigue. Dr. Martin noted numerous

tender spots over Plaintiff's body consistent with fibromyalgia and referred her to Dr. Fant, a rheumatologist. Tr. 116. Plaintiff complained of fatigue, malaise, fibromyalgia, and depression on July 12, 2001. Dr. Martin recommended counseling. Tr. 114.

On January 16, 2002, Dr. Martin noted that Plaintiff continued to have depression, diabetes, and hypothyroidism. He wrote that Plaintiff's diabetes was not under good control and that Plaintiff was "not motivated at this point." Physical examination revealed normal reflexes, intact cranial nerves II-XII, and no neurological deficits. Plaintiff indicated that she intended to see a psychiatrist in the near future. Tr. 112. On May 22, 2002, Plaintiff complained of fatigue and malaise. Dr. Martin scheduled hormone studies and referred Plaintiff to Dr. Rita Jain, an endocrinologist. Tr. 110.

On August 20, 2002, Dr. Jain noted that Plaintiff had insulin with some precipitation in it (caused by improper shipping by her diabetic supply company) which may have caused Plaintiff's very erratic blood sugars. Dr. Jain noted that Plaintiff's blood sugars were "now well controlled running less than 150 for the most part." Tr. 97. On November 21, 2002, Plaintiff reported to Dr. Jain that she had elevated blood sugars occurring before dinnertime and Dr. Jain asked Plaintiff to increase the rate of insulin during certain times. Tr. 96.

On February 25, 2003, Plaintiff complained of significant fibromyalgia and overwhelming fatigue and thought that she would be unable to work any meaningful employment. Physical examination revealed clear breath sounds bilaterally, no significant edema, regular heart rate and rhythm, equal and strong pulses, no neurological deficits, normal reflexes, and intact cranial nerves II-XII. Dr. Martin diagnosed Plaintiff with fibromyalgia with overwhelming fatigue and malaise with pain. Tr. 106.

On November 8, 2003, Plaintiff was evaluated by Dr. Robespierre M. Del Rio, a psychiatrist. Plaintiff reported that she had depression and fibromyalgia, and that she had suffered from depression since she was fourteen years old. She stated that she was on medication to alleviate her pain, and she had difficulty ambulating, bending, stooping, squatting, jumping, running, sitting, and standing. Plaintiff reported that she shopped, occasionally cleaned, cooked, did laundry, cooked at least three times per week, and she did not have difficulty performing activities of daily living. Dr. Del Rio observed that Plaintiff ambulated with minimal difficulty. Examination revealed that Plaintiff's level of intellectual functioning was within normal range, her insight and judgment were "fair to good," and her memory was intact for recent, immediate, and remote events. Dr. Del Rio opined that there was no clear evidence that Plaintiff had impaired social functioning or a tendency towards social isolation; she had the ability to complete tasks, receive, and integrate new information if given ample time and instructions; and there was no clear indication of repeated failures to adapt to stressful situations. Tr. 99-103.

Medical records from Palmetto Family Medicine dated June 20, 2003 through April 4, 2005, reveal that Plaintiff was given medication samples of various medications (including Prevacid, Cymbalta, Synthroid, Wllbutrin, and Zocar) on numerous occasions and had various prescriptions phoned into her pharmacy. There is, however, no indication of any physical examination or treatment until Plaintiff was seen by Dr. Sharon Risinger on February 18, 2005. See Tr. 223-237.

Plaintiff was admitted to Providence Hospital in Columbia, South Carolina from February 18 to 19, 2005. She had diabetic ketoacidosis of uncertain etiology, but possibly caused by a site

problem of the insulin pump. Physical examination was within normal limits. It was also noted that there was no obvious microvascular disease due to Plaintiff's diabetes. Tr. 211-222.

Plaintiff alleges that the ALJ erred by disregarding the opinions of Plaintiff's treating physician (Dr. Martin) that Plaintiff was disabled. The Commissioner contends that the ALJ's decision is supported by substantial evidence[1] and that the ALJ properly discounted Dr. Martin's opinions of disability.

On January 12, 2004, Dr. Martin wrote a "To Whom It May Concern" letter stating:

> [Plaintiff] is a long-term patient of our practice. She has a history of diabetes, hypothyroidism, anterior mitral valve prolapse and vasogenic syncope as well as fibromyalgia and chronic fatigue. She has been seen by numerous specialists including a rheumatologist as well as sleep specialist and has ideopathic hypersomnia. It is recommended that she remain out of work. Because of her fatigue and malaise, she is unable to work for any length of time during a given day. She requires daily rest and medically does much better when she is able to get her rest. At the time she is unable to maintain any gainful employment.

Tr. 104. On March 24, 2005, Dr. Martin completed an "Attending Physician's Statement" in which he diagnosed Plaintiff with vasogenic syncope, fibromyalgia, diabetes, and hypothyroidism. He indicated that Plaintiff's last visit to him had been on February 25, 2003. On the form, Dr. Martin checked that Plaintiff's functional capacity was slightly limited, her activity was markedly restricted, and she had a severe limitation of functional capacity such that she was incapable of minimum sedentary activity. Tr. 206. He further indicated that Plaintiff had marked limitations from a mental

---

[1]Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

nervous impairment and was unable to engage in stressful situations or engage in interpersonal relations. Dr. Martin wrote that Plaintiff was totally disabled and was incapable of performing all duties of her occupation. Tr. 207.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

The ALJ's decision to discount Dr. Martin's opinion is supported by substantial evidence. Dr. Martin's January 2004 opinion was given almost a year after Dr. Martin last examined Plaintiff and his March 2005 opinion was given more than two years after he last examined her. See Mastro

v. Apfel, 270 F.3d 171, 178 (4th cir. 2001)(Discounting treating physician's opinion in part because the opinion was given one year after last date of treatment of claimant).  Although Dr. Martin appears to have prescribed medications after that point, there are no notes of any examinations, treatment, or even details of any of her symptoms.  Dr. Martin's own treatment notes do not reflect the extent of disability opined by him.   Physical examinations in January 2002 and February 2003 revealed essentially normal findings.  See Tr. 106, 112.

Dr. Martin's treatment notes did not reflect that Plaintiff consistently reported complaints of chronic pain, and pain medication was rarely prescribed.  On her medication list, Plaintiff listed Ibuprofen (as needed) as her only medication for fibromyalgia and pain.  Tr. 88.  Thus, for significant periods of time, Plaintiff did not take any strong pain medications for his allegedly disabling pain.  See, e.g., Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (expressing approval of ALJ's consideration of a plaintiff's lack of strong pain medication); see also 20 C.F.R. § 404.1529(c)(3)(listing "other evidence" to be considered when "determining the extent to which [claimant's] symptoms limit [claimant's] capacity for work," including, "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]").

The ALJ's decision to discount Dr. Martin's opinion is also supported by the medical records of other examining physicians.  The medical records of Dr. Jain, Dr. Del Rio, and those of Plaintiff's February 2005 hospitalization also do not support Plaintiff's claim of total disability.

The ALJ's decision is also supported by the opinion of the State agency psychologist who reviewed Plaintiff's medical records and completed RFC assessments which showed a capacity for at least light work.  20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact

made by State agency ... [physicians and psychologists]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). On November 25, 2003, Dr. Manhal Wiehland, a psychological consultant for the State agency, reviewed Plaintiff's records and completed a mental residual functional capacity assessment. Dr. Wiehland opined that:

> Due to depression and chronic pain, [Plaintiff] may have difficulty sustaining her concentration and pace on complex tasks and detailed instructions. However, she should be able to attend to and perform simple tasks for 2+ hours without special supervision. She can attend work regularly, but may miss an occasional day due to her mental condition, and would function better in a slower-paced, lower-stressed work environment. She can relate appropriately to supervisors and co-workers, however, [she] may find work with the general public stressful at this time. She can make simple work-related decisions and occupational adjustments, adhere to basic standards for hygiene and behavior, protect herself from normal work-place safety hazards and use public transportation.

Tr. 189. Additionally, Dr. Wiehland completed a Psychiatric Review Technique form in which he opined that Plaintiff had moderate limitations in her activities of daily living; her social functioning; and her ability to maintain concentration, persistence, or pace. He found that she had no episodes of decompensation. Tr. 202. Additionally, the State agency physician who reviewed Plaintiff's medical records found no severe impairments and placed no restrictions on Plaintiff's ability to work. See Tr. 186.

Additionally, the ALJ's decision is supported by Plaintiff's activities of daily living. Plaintiff reported to Dr. Del Rio that she helped get her two children ready for school each day, performed occasional cleaning, occasionally did laundry, and typically cooked three times a week. In "Lay Evidence" report dated September 3, 2003, Plaintiff reported that she drove, went to the store to pick up a few items, did the lighter household chores, handled 60 to 70 percent of the family's finances, used a computer program for budgeting, attended church about twice a month,

attended an occasional Wednesday night service, and emailed her sister. Tr. 77. At the hearing, Plaintiff testified that she got her children ready for school, fixed herself lunch, dusted, made scrapbooks, and helped her children with their homework. Tr. 274-275, 277-278. Thus, Dr. Martin's statement that Plaintiff could not perform even the minimal demands of sedentary work was inconsistent with Plaintiff's own assessment of her limitations.

Plaintiff also appears to argue that the ALJ erred by not considering the factors outlined in 20 C.F.R. § 404.1527 (these factors include the treatment relationship, length of treatment, frequency of treatment, nature and extent of treatment relationship, supportability, and consistency) in considering Dr. Martin's opinions. Here, however, the ALJ acknowledged that Dr. Martin was Plaintiff's treating physician. See Tr. 24. Review of the ALJ's decision, reveals that she specifically considered Dr. Martin's opinions and implicitly considered the factors of 20 C.F.R. § 404.1527(d) including the nature of the treatment relationship in rejecting these opinions as inconsistent with other evidence of the record. See Branum v. Barnhart, 385 F.3d 1268, 1275-76 (10th Cir. 2004)(holding that the ALJ properly rejected the opinion of a treating physician, but was not required to make express findings on all of the regulatory factors).

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a

plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock v. Richardson</u>, supra.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion.  <u>Shively v. Heckler</u>, supra.  It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

Joseph R. McCrorey
United States Magistrate Judge

October 20, 2008
Columbia, South Carolina