IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Cheryl Pinson, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 3:07-1056-PMD-JRM |
| v. ) | |
| ) | |
| Linda S. McMahon, Acting ) | **ORDER** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Cheryl Pinson ("Claimant") brought this action, pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Social Security Commissioner denying her claims for Disability Insurance Benefits ("DIB"). The record contains a Report and Recommendation ("R&R") of a United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B), that recommends the court affirm the Commissioner's decision for further consideration.

**BACKGROUND**

Claimant did not make any specific objections to the Magistrate Judge's presentation of either the administrative proceedings or Claimant's medical record in this case; therefore, the court adopts them for purposes of framing the background of this case. The court discusses any specific references to medical records made by Claimant in her Objections to the R&R in its analysis below.

A.   **Administrative Proceedings**

Claimant applied for DIB on August 26, 2003. She was 34-years-old at the time she claims to have become disabled and 39-years-old at the time of the ALJ's decision. She has a college education and past relevant work as a billing specialist and accounting clerk. Claimant

alleges disability since September 2, 2001, due to depression, diabetes, fibromyalgia, and hypothyroidism. After her application was denied after both an initial review and on reconsideration, Claimant requested a hearing before an administrative law judge ("ALJ"). The ALJ issued a decision on October 20, 2005 which denied Claimant benefits and concluded that, after hearing testimony of a vocational expert, work exists in the national economy which Claimant can perform. The ALJ found the following:

1. The claimant met the non-disability requirements for a period of disability and Disability Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's diabetes mellitus and depression are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, of Regulation No. 4.

5. The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: to perform work with restrictions requiring [lifting and/or carrying over 10 pounds occasionally and 3–5 pounds frequently with a sit/stand option due to the claimant's diabetes mellitus. Due to the claimant's depression, she would be limited to simple, routine work in a low stress environment.] (Tr. at 26.)

7. The claimant is unable to perform any of her past relevant semi-skilled work (20 CFR §404.1565).

8. The claimant is a "younger individual" (20 CFR § 404.1563).

9. The claimant has "more than a high school education" (20 CFR § 404.1564).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.15638).

11. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 404.1567).

12. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as clerical sorter, addresser, and order clerk, with approximately 10,000 jobs in the statewide economy in excess of 700,000 jobs nationally.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

On March 13, 2007, the Appeals Council denied Claimant's request for review, making the decision of the ALJ the final action of the Commissioner. Claimant filed this action on April 18, 2007. The Magistrate Judge issued an R&R on October 20, 2008, recommending that the Commissioner's final decision be affirmed. Claimant filed timely objections.

**B.     Medical Evidence in the Record**

Beginning in March 1999, Claimant was treated by Dr. J. Frank Martin, a family practitioner with Palmetto Family Medicine for various impairments, including sinus problems, diabetes, dizziness, and arthritic complaints. (*See* Tr. 116-125.) On January 17, 2001, Claimant complained of pain and numbness in her lower extremities with overwhelming fatigue. Dr. Martin noted numerous tender spots over Claimant's body, consistent with fibromyalgia, and referred her to Dr. Fant, a rheumatologist. (Tr. 116.) On July 12, 2001, Claimant complained of fatigue, malaise, fibromyalgia, and depression. Claimant informed Dr. Martin on this date that she was going to attempt to go back to work, and Dr. Martin recommended further counseling. (Tr. 114.) On January 16, 2002, Dr. Martin noted that Claimant continued to have depression, diabetes, and hypothyroidism. (Tr. 112.) He also noted that Claimant's diabetes was "not under good control," and that Claimant was "not motivated at this point." (*Id.*)

As of May 22, 2002, Claimant complained of fatigue and malaise, and Dr. Martin referred Claimant to Dr. Rita Jain, an endocrinologist. (Tr. 110.) On August 20, 2002, Dr. Jain

found that Claimant's insulin had some precipitation in it as a result of the diabetic supply company no longer sending the insulin through overnight delivery on ice. Dr. Jain believed the precipitation in the insulin may have caused Claimant's erratic blood sugar levels and noted that, while using the new insulin, Claimant's blood sugars were "well controlled . . . for the most part." (Tr. 97.) On November 21, 2002, Claimant had a follow-up appointment with Dr. Jain, and Dr. Jain found that she had elevated blood sugars occurring before dinnertime and asked Claimant to increase the rate of insulin during certain times. (Tr. 96.) Notes from a December 20, 2002 visit to Dr. Martin indicated that, as of this date, Claimant felt better and her blood sugars were much more controlled. (Tr. 107.)

On February 25, 2003, Dr. Martin's notes indicated that Claimant had significant fibromyalgia and overwhelming fatigue, which prevented her from working. (Tr. 106.) Furthermore, Claimant indicated to Dr. Martin on this date that she did not think she would be able to work any meaningful employment. (*Id.*) A physical examination of Claimant on this date revealed clear breath sounds bilaterally, no significant edema, regular heart rate and rhythm, equal and strong pulses, no neurological deficits, normal reflexes, and intact cranial nerves II-XII. (*Id.*) Based on his evaluation, Dr. Martin diagnosed Claimant with fibromyalgia with overwhelming fatigue and malaise with pain. (*Id.*) This was Claimant's last visit with Dr. Martin, which Claimant explains by the fact that her insurance "ran out" in February 2003 due to her "financial difficulties." (Tr. 100; Objections at 2.)

On November 8, 2003, Dr. Robespierre M. Del Rio, a psychiatrist, evaluated Claimant. Claimant informed Dr. Del Rio that she had depression and fibromyalgia and that she suffered from depression since she was 14-years-old. She stated that she was on medication to alleviate her pain, and she had difficulty ambulating, bending, stooping, squatting, jumping, running,

4

sitting, and standing. Plaintiff reported that she shopped, occasionally cleaned, did laundry, cooked at least three times per week, and she did not have difficulty performing activities of daily living. Dr. Del Rio observed that Claimant ambulated with minimal difficulty. Furthermore, he concluded that Claimant's level of intellectual functioning was within normal range, her insight and judgment were "fair to good," and her memory was intact for recent, immediate, and remote events. Dr. Del Rio opined that there was no clear evidence that Plaintiff had impaired social functioning or a tendency towards social isolation; she had the ability to complete tasks, receive and integrate new information if given ample time and instructions; and there was no clear indication of repeated failures to adapt to stressful situations. (Tr. 99–103.)

Medical records from Palmetto Family Medicine dated June 20 2003 through April 4, 2005 reveal that Claimant was given medication samples of various medications on numerous occasions and had various prescriptions phoned into her pharmacy. (Tr. 223–37.) As noted above, there was no physical examination or treatment of Claimant until February 18, 2005, when Claimant was admitted to Providence Hospital in Columbia, South Carolina for two days. (Tr. 211.) Dr. Sharon Risinger evaluated Claimant and found she had diabetic ketoacidosis of uncertain etiology, but might have been caused by the fact that Claimant had not changed her insulin pump site in three or four days despite her progressive nausea and vomiting for three days prior to her admittance to the hospital. Dr. Risinger further found that Claimant's physical examination was within normal limits and noted that there was no obvious microvascular disease due to Claimant's diabetes. (Tr. 211–12.)

5

# STANDARD OF REVIEW

## A. Magistrate Judge's Report and Recommendation

The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within ten days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in part. *Id.* Additionally, the court may recommit the matter to the Magistrate Judge with instructions. *Id.* A party's failure to object is accepted as an agreement with the conclusions of the Magistrate Judge. *See Thomas v. Arn*, 474 U.S. 140 (1985).

## B. Judicial Review Under Social Security Act

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Although this court may review parts of the Magistrate Judge's R&R *de novo*, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> 'evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (alteration in original)).

## ANALYSIS OF CLAIMANT'S OBJECTIONS

### I.     The Opinion of Claimant's Treating Physician, Dr. J. Frank Martin

Claimant primarily objects to the Magistrate Judge's finding that substantial evidence supports the ALJ's decision to discount the opinion of Dr. Martin, Claimant's treating physician and a family practitioner. Claimant argues that Dr. Martin "rendered regular and frequent hands on treatment of Claimant" and that "the Commissioner and Magistrate Judge . . . failed to accord the proper weight to the records and opinions of [Dr. Martin] even though no significant contradictory evidence exists." (Objections at 1, 4.)

In a letter dated January 12, 2004, Dr. Martin stated that Claimant had a history of diabetes, hypothyroidism, anterior mitral valve prolapsed, and vasogenic syncope as well as fibromyalgia and chronic fatigue, and that she had been seen by numerous specialist including a rheumatologist and sleep specialist and had idiopathic hypersomnia. He recommended that Claimant remain out of work and, because of her fatigue and malaise, stated that she was unable to work for any length of time during a given day. He stated that Claimant required daily rest and medically did much better when she was able to get her rest, but that, as of that date, she was unable to maintain any gainful employment.

Dr. Martin completed an Attending Physician's Statement on March 24, 2005, which indicated he last saw Claimant on February 25, 2003. He noted that her diagnosis included

vasogenic syncope, fibromyalgia, diabetes, and hypothyroidism. He found, according to the American Heart Association, that Claimant had a slight limitation in her functional capacity; a marked restriction on her activity; a severe limitation regarding her physical impairment and was incapable of minimum sedentary activity; and regarding mental nervous impairment, he noted that Claimant had marked limitations and was unable to engage in stress situations or engage in interpersonal relations. Finally, he noted that Claimant was totally disabled and was incapable of performing any duties related to an occupation. On a Medical Source Statement, also completed on March 24, 2005, Dr. Martin indicated that Claimant was limited to occasionally lifting and/or carrying (including upward pulling) less than 10 pounds; was unable to frequently lift any weight; was limited to standing and/or walking a total of two hours in an 8-hour workday, 30 minutes without interruption; was limited to sitting a total of three hours in an 8-hour workday, one hour without interruption; and never climb, balance, stoop, crouch, kneel, or crawl.

The legal standard to apply when evaluating a treating physician's opinion is contained in 20 C.F.R. § 404.1527. Under section 404.1527(d)(2), the opinion of a treating physician is entitled to more weight than the opinion of a non-treating physician. It is only given controlling weight, however, if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). This standard is more stringent than the old "treating physician rule," which accorded a treating physician's opinion controlling weight unless the record contained persuasive evidence to the contrary. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Under section 404.1527, if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he or she must then consider the weight to be given to the physician's opinion by applying five factors identified in the regulation: (1) the length of the

8

treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527(d)(2)(i)–(ii), and (d)(3)–(5).

In his decision, the ALJ recognized that Dr. Martin's medical opinion is entitled to special significance, but also noted:

> However, Dr. Martin so stated (Exhibit 7F, pg 1) that the claimant's last visit was February 25, 2003, and the form was completed on March 24, 2005, more than two years later. In addition, Dr. Martin's treatment notes (Exhibit 5F) do not reflect that the claimant consistently reported complaints of chronic pain, and pain medication was never prescribed. In addition, Dr. Martin noted that he had attempted on several occasions to talk to the claimant at length regarding going back to work, and he further recommended that the claimant attend counseling (Exhibit 5F, pg 11).

In her objections, Claimant explains the lapse in treatment by Dr. Martin on her loss of health insurance and her financial inability to pay for formal, in-office medical care on a sustained regular basis. Unquestionably, a claimant may not be penalized for failing to seek treatment she cannot afford, as "it flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)). Even if the court excuses the two-years that Dr. Martin did not treat Claimant prior to providing his opinion that Claimant was disabled, the Magistrate Judge found that the ALJ's decision to discount Dr. Martin's opinion was supported by the lack of substantial evidence in his own notes supporting his decision; the medical records of other doctors; and Claimant's own testimony before the ALJ about her daily living.

In response to the Magistrate Judge's finding that Dr. Martin's own notes do not reflect the extent of disability opined by him, Claimant argues that the ALJ and Magistrate Judge

9

merely examined the evidence favorable to the Commissioner and did not examine the entire record. At her April 22, 2005 hearing before the ALJ, Claimant testified that her worst problem was pain and fatigue due to fibromyalgia. Regarding Claimant's alleged disability due to fibromyalgia, the ALJ found that "there is no evidence contained in the overall evidence of the record that the claimant has continued to experience chronic and severe pain due to fibromyalgia, and there is no evidence of prescribed pain medication due to complaints of fibromyalgia." (Tr. 25.) The Magistrate Judge agreed, noting that "Dr. Martin's treatment notes did not reflect that [Claimant] consistently reported complaints of chronic pain, and pain medication was rarely prescribed. On her medication list, [Claimant] stated that she took Ibuprofen, as needed, for pain related to fibromyalgia. Thus, for significant periods of time, [Claimant] did not take any strong pain medications for her allegedly disabling pain." (R&R at 8.) In her Objections, Claimant argues that Dr. Martin "documented in detail Claimant's history of diabetes and problems with lethargy and arthritic and athralgia complaints over the entire course of his treatment." (Objections at 2.) Furthermore, Claimant cites Dr. Martin's January 17, 2001 report, which noted that Claimant had quite a bit pain and numbness in her lower extremities and had "numerous tender spots over her body, consistent with fibromyalgia." (*Id.*)

The court agrees with the ALJ's and Magistrate Judge's conclusion that the substantial evidence does not exist in Dr. Martin's treatment records to support his opinion that Claimant is disabled due to fibromyalgia. While Dr. Martin's January 17, 2001 report did indicate that Claimant experienced tender spots over her body consistent with fibromyalgia, that report also noted that the numbness was not related to any symptoms of fibromyalgia but rather diabetic neuropathy. Furthermore, Dr. Martin's note on this date only discussed prescribing Claimant Effexor, an antidepressant, and did not prescribe any pain medication. After a July 12, 2001

10

treatment note indicated Claimant continued to have fatigue and malaise, fibromyalgia, and depression, Claimant did not complain about tender spots or chronic muscle pain throughout her body and Dr. Martin's notes did not mention fibromyalgia until his final treatment note on February 25, 2003. Thus after four years of examining Claimant, which Claimant asserts consisted of sixty-six visits, Dr. Martin's notes only indicate Claimant complaining about tenderness and pain consistent with fibromyalgia on a few occasions.

The record also reveals that, while Claimant has taken prescription medication to combat high blood pressure, high cholesterol, hypothyroidism, reflux, and depression, she did not take any prescription medication to deal with the alleged disabling pain caused by fibromyalgia, which Claimant asserts is her biggest problem. It appears that Dr. Martin prescribed Zanaflex to treat the fibromyalgia on February 25, 2003, the last time he examined Claimant, but Claimant indicated to Dr. Del Rio on November 8, 2003 that, as of that date, she was not taking any medication to alleviate any of her pain which she described as being between a 6 and a 7 on a 10 point scale, with 10 being high pain. (Tr. 102.). As noted above, Claimant only listed Ibuprofen, "as needed," on her medication list to the Social Security Administration as her pain medication for her fibromyalgia. At her hearing, Claimant informed the ALJ that she tries to get extra rest to control the pain level, but certainly Claimant would require stronger medication than rest and Ibuprofen to alleviate the "24/7 flu-like" pain she alleges to experience. Therefore, the record supports the ALJ's finding that Dr. Martin's "treatment notes do not reflect that the claimant consistently reported complaints of chronic pain, and pain medication was never prescribed." *See, e.g.*, *Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir. 1984) (finding that the ALJ properly considered a plaintiff's lack of strong medication in determining that plaintiff's allegation of debilitating pain was not credible); *see also* 20 C.F.R. § 404.1529(c)(3) (listing "other evidence"

11

to be considered when "determining the extent to which a claimant's symptoms limit his or her capacity to work," including the "type, dosage, effectiveness and side effects of any medication you take or have taken to alleviate your pain or other symptoms").

The ALJ and Magistrate Judge also found that the medical records of other examining physicians did not support Dr. Martin's opinion on the extent of Claimant's alleged disabling pain. On June 26, 2002, Claimant saw Dr. Risinger for a follow-up after going through a 21-day treatment for sinusitis. Dr. Risinger's notes indicate that Claimant continued to complain of fatigue, but had no other symptoms other than a mild headache. The report suggested that the fatigue was related to Claimant's ongoing sinus problems. Dr. Risenger noted that Claimant's fatigue could also be related to her chronic history of depression but would wait for the results of Claimant's sinus CT. On February 18, 2005, Claimant spent two days admitted to Providence Hospital for diabetic ketoacidosis. None of these records indicate any complaints by Claimant of chronic pain or tenderness associated with fibromyalgia. An April 20, 2004, a doctor's Medical Evaluation Referral concerning Claimant's physical impairments indicated that Claimant's fibromyalgia was "not severe," and "there is no evidence of a severe physical impairment." (Tr. 184.)

Finally, Dr. Martin's January 17, 2001 treatment note and January 12, 2004 letter indicated that Claimant had seen "numerous specialists including a rheumatologist and a sleep specialist;" however, Claimant has not offered any treatment notes or opinions from these specialists to corroborate her allegations of disabling pain from fibromyalgia; she has relied solely on the opinion of her family practitioner rather than her specialists. 20 C.F.R. § 404.1527(d)(5) (explaining that the ALJ should give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is

12

not a specialist"). In her Objections, Claimant even notes that "the only substantial evidence of record in regard to [Claimant's] disability status were Dr. Martin's records and opinions." Thus, the ALJ properly concluded not to afford Dr. Martin's opinion controlling weight regarding her alleged disabling pain caused by fibromyalgia. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

In her Objections, Claimant also argues that Dr. Martin "documented in detail Claimant's history of diabetes and problems with lethargy and arthritic and athralgia complaints over the entire course of his treatment." (Objections at 2.) Regarding Claimant's diabetes, the records show that Claimant did complain of being unable to control her diabetes. She saw Dr. Jain, an endocrinologist, on August 20, 2002 after complaining about fatigue and malaise. Dr. Jain found that Claimant's insulin had some precipitation in it as a result of the diabetic supply company no longer sending the insulin through overnight delivery on ice. Dr. Jain believed the precipitation in the insulin may have caused Claimant's erratic blood sugar levels and noted that, while using the new insulin, Claimant's blood sugars were "well controlled . . . for the most part." (Tr. 97.) On November 21, 2002, Claimant had a follow-up appointment with Dr. Jain, and Dr. Jain found that she had elevated blood sugars occurring before dinnertime and asked Claimant to increase the rate of insulin during certain times. (Tr. 96.) Notes from a December 20, 2002 visit to Dr. Martin indicated that, as of this date, Claimant felt better and her blood sugars were much more controlled. (Tr. 107.) Finally, Claimant indicated in a January 16, 2004 letter that she had her diabetes and hypothyroidism under control. Claimant testified at her hearing that she uses an insulin infusion pump to regulate her insulin and has used it for about 18 years. Thus, substantial evidence supports the ALJ's finding that the overall evidence does not show severe

13

complications related to hypothyroidism and diabetes, and both problems have been properly controlled and stabilized through medication.

Lastly, Dr. Martin opined that Claimant's bout with depression has disabled her as well. The ALJ found that Claimant "would have no restrictions of activities of daily living, no difficulties in maintaining social functioning, and moderate difficulties in maintain concentration . . . and [she] found no evidence of repeated episodes of deterioration or decomposition of extended duration." (Tr. at 26.) An April 25, 2003 report by Dr. Manhal Wieland, a psychological consultant, found the following:

> Due to depression and chronic pain, claimant may have difficulty sustaining her concentration and pace on complex task and detailed instructions. However, she should be able to perform simple tasks for 2+ hours without special supervision. She can attend work regularly, but may miss an occasional day due to her mental condition, and would function better in a slower-paced, lower-stress work environment. . . . She can make simple work-related decisions and occupational adjustments, adhere to basic standards for hygiene and behavior, protect herself from normal work-place safety hazards and use public transportation.

(Tr. 189.) A September 3, 2003 report on Claimant's condition reveals that Claimant believed 50% of her days are good; that she assists her children with their homework; that she handles 60–70% of the finances for the family, while she and her husband share the remaining 30%; and that she attends church about twice a month. On November 8, 2003, Claimant had a consultative psychiatric mental status examination by Dr. Robespierre Del Rio, which showed Claimant with a diagnostic impression of depressive disorder. She informed Dr. Del Rio that:

> She is able to move about with ongoing movement. She denies feeling short of breath on mild-to-moderate exertion. She does minimal shopping and performs occasional cleaning, cooking, and laundry chores. She tries to cook a meal at least three times a week. She reports that she is able to maintain her activities of daily living without assistance but typically does her major hygiene protocols every three days in order not to exhaust herself.

(Tr. 102.) Based on his examination, Dr. Del Rio found that there was no clear evidence of

impaired social functioning; Claimant had the ability to complete tasks, receive and integrate new information if given ample time and instructions; and she showed positive response to medication adjustment in the past and required more aggressive therapeutic management in order to abate her symptoms of depression and to improve her overall sense of well being. (Tr. 103.)

At her hearing before the ALJ, Claimant testified that she left her job due to depression and that she worked at home for approximately one and a half years posting payments. She was able to perform this work on a consistent basis, despite the fact that her health limited her to working five hours a day. She listed her daily activities as including getting up with her husband, packing the children's' lunches and getting them off to school, dusting, laundry, reading, helping the children with their homework, and going to the store to get a loaf of bread. (Tr. 25.) She stated that she scrapbooks, attends church, and occasionally sings solo. (Tr. 26.)

Based on the medical records and Claimant's testimony regarding her daily activities, the court finds that substantial evidence supports the ALJ's decision not to give controlling weight to Dr. Martin's opinion that Claimant's depression prevents her from working, but rather that "[d]ue to [Claimant's] depression, she "would be limited to simple, routine work in a low stress environment." (Tr. at 26.)

## II.   ALJ's Analysis Pursuant to 20 C.F.R. § 404.1527

Claimant also argues that the ALJ erred in failing to engage in the proper analysis required under 20 C.F.R. § 404.1527 in assessing Dr. Martin's opinion. Under section 404.1527, if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he or she must then consider the weight to be given to the physician's opinion by applying six factors identified in the regulation: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with

which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion, and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)(i)–(ii), and (d)(3)–(6). The Magistrate Judge found that the ALJ specifically considered Dr. Martin's opinions and implicitly considered the factors noted above, including the nature of the treatment relationship in rejecting these opinions as inconsistent with other evidence in the record. The court agrees.

While the ALJ did not expressly list the five factors noted above and specifically address each one in order, the ALJ did note the fact that Dr. Martin was Claimant's treating physician and that two years passed between the dates Dr. Martin last examined Claimant and the when he rendered his opinion concerning Claimant's alleged disabilities. Furthermore, the ALJ acknowledged that Claimant did not consistently complain of tenderness and chronic pain to Dr. Martin, nor did Claimant take prescription medicine to alleviate her alleged disabling pain. Finally, the ALJ recognized that Dr. Martin is a family physician and considered "the lack of frequent emergency room visits or hospitalizations for pain, the paucity of objective findings of abnormality, and the lack of substantiation of the asserted degree of impairment by the clinical findings" in making her credibility and disability determinations. Therefore, the court does not find that the ALJ failed to properly analyze Dr. Martin's opinion.

## **CONCLUSION**

The court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Even when a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. After a careful examination of the record as a whole, the court concludes that the ALJ's decision to deny disability insurance benefits was based on correct legal principles and was supported by substantial evidence. It is, therefore, **ORDERED**, for the foregoing reasons, that the Commissioner's denial of benefits is **AFFIRMED.**

**IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**March 19, 2009**